[Cite as *Hoening v. Frick*, 2011-Ohio-6804.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### DARKE   COUNTY

|  |  |  |
|---|---|---|
| MARY LOU HOENING | : | |
| | : | Appellate Case No.   2010-CA-22 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 08-CV-64840 |
| v. | : | |
| | : | |
| DANIEL FRICK | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 30th day of December, 2011.

. . . . . . . . . . .

MARY LOU HOENING, Post Office Box 375, Gettysburg, Ohio 45328
       Plaintiff-Appellant, *pro se*

PAUL H. SHANEYFELT, Atty. Reg. #0065629, Dungan & LeFevre Co., L.P.A., 210 West
Main street, Troy, Ohio 45373
       Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Plaintiff-appellant Mary Hoening appeals from a judgment of the Darke County
Court of Common Pleas dismissing her claims for fraud and conversion against
defendant-appellee Daniel Frick.  Hoening contends that the trial court erred in finding that
Hoening agreed to give Frick possession of real estate as of August 1, 2008.  She also

contends that the trial court abused its discretion by continuing the trial date. Finally, Hoening claims that the trial court made numerous errors during the course of trial and that the judgment is against the manifest weight of the evidence.

**{¶ 2}** We conclude that the trial court did not abuse its discretion when it continued the trial date – Hoening had requested the continuance. We further conclude that the claimed trial errors are without merit. Finally, we conclude that the trial court's findings and judgment are supported by competent, credible evidence.

**{¶ 3}** Accordingly, the judgment of the trial court is Affirmed.

I

**{¶ 4}** Mary Hoening and her husband, Carl, were the owners of a residence, barns and acreage located at 8216 Ryan Run in Darke County. The Hoenings did not live on the property, but used it as a "catch-all for all [their] junk and many precious things [they] could not part with." The record shows that Hoenings' sons used the property to store their "junk cars and lumber," and that parts of the property were run down.

**{¶ 5}** In January 2008, the Darke County Health Department sent an inspector to the property due to complaints from neighbors. The inspector noted that there was "junk" scattered all over the property and that one of the barns was falling down. She noted that the amount of things scattered across the property was "overwhelming." The Health Department immediately sent a letter to the Hoenings giving them thirty days to clean the property. In March the inspector returned to the property and found no change. Then in April, the inspector was notified by Mary Hoening that she had a potential buyer for the property. The record shows that the Hoenings could not afford to effect the clean-up of the property, so they

decided that they had to sell.

{¶ 6}  Thereafter, on April 17, 2008, Hoening and Daniel Frick executed a contract for the purchase of the property.   The contract, which was signed by both Hoening and Frick, stated that "if closing can be by May 15, 08," Hoening agreed to sell the house to Frick for the sum of $47,000.   The contract further stated that "[p]ossession of the property [is] to be given on July 15, 08."   The contract also stated that Hoening "may leave leftover refuse for disposal by Mr. Frick."

{¶ 7}  Frick was unable to obtain financing, and was unable to close on May 15.  Hoening executed a handwritten note dated May 14 stating that she had received $5,000 from Frick as a down payment on the house.   The note stated, "[b]alance due at closing in 30 days."   The note was signed by Hoening.

{¶ 8}  The closing took place on June 13, 2008.   Thereafter, a dispute arose regarding possession.   Hoening contended that the original contract gave Frick possession two months after closing.   Frick contended that the date for possession remained unchanged from the original contract date of July 15.

{¶ 9}  Hoening had many boxes of personal items, clothes, and other items located in the house after the closing date.   She claimed that she intended to clear the house prior to the date Frick was to take possession.   To that end, she claimed that she was on the property almost daily trying to sort the items into things to keep, things to sell, and things to dispose of.  She held a professional auction on the property on June 13, 2008.   However, many of her items did not sell and she continued to sort through them.

{¶ 10} Frick was not given possession of the home on the stated contract date of July

15, and the dispute over possession of the home continued. Hoening then sent a handwritten letter, dated July 23, to Frick stating in pertinent part that she would "have the house cleaned out for [Frick] for August 1st."

{¶ 11} Hoening claims that on August 1, 2008, Frick "went to the home of the [Hoenings] requesting a key to the property on the basis that he wanted to walk through the property to begin assessing what work he would need to do." Hoening gave Frick a key, but claims she told him to return it. She claims that once he gained access to the residence he changed the locks thereon. She further claims that Frick disposed of or destroyed personal property contained in the residence by disposing of it in a dumpster she had rented and placed on the property.

{¶ 12} On August 12, 2008, Mary Hoening filed a complaint against Daniel Frick. The case was assigned case number 08-CV-64840. Hoening set forth claims sounding in conversion and fraud against Frick, whom she contended had destroyed, or disposed of, her personal property that had been left in the residence and on the property. Hoening also filed a motion for a temporary restraining order restraining Frick from disposing of her property. A temporary restraining order requiring that Frick not damage or dispose of Hoening's personal property was entered on August 15. Hoening had the dumpster and its contents moved to the home she was living in at the time. Thereafter, Frick filed an answer and a counterclaim in which he alleged that Hoening had sold him a defective house.

{¶ 13} In May, Hoening's counsel withdrew, and Hoening, acting pro se, moved to continue the trial date, which had been set for June 11, 2009. The trial court denied the motion. Hoening dismissed her complaint pursuant to Civ.R. 41(A), and the matter

proceeded to trial on Frick's counterclaim. The trial court entered judgment in favor of Frick and Hoening appealed.

{¶ 14} On appeal, we held that the trial court had abused its discretion by denying Hoening's motion to continue. *Hoening v. Frick*, 187 Ohio App.3d 139, 2010-Ohio-1788, ¶ 17. The judgment was reversed and the cause was remanded for further proceedings. Id.

{¶ 15} On June 8, 2010, Hoening re-filed her complaint under new case number 10-CV-437. The complaint was exactly the same as the previous complaint with the exception that Hoening's husband, Carl, was added as a plaintiff.

{¶ 16} The trial court filed an entry in the 2008 case setting Frick's counterclaim for trial on July 19, 2010. On July 7, 2010, Hoening filed a motion for a continuance in both cases. She also asked that the cases be consolidated. The trial court denied both requests. Later, on July 12, 2010, a notice of appearance of counsel was filed on behalf of Hoening along with another request for a continuance of the trial date.

{¶ 17} On July 16, the parties attended a pretrial hearing, with counsel, during which the trial court granted a continuance and set the trial of both cases for November 12, 2010. Although the trial court refused to consolidate the cases, it entered an order that the cases would be tried at the same time. Following the trial, the court entered judgment, dated November 24, in favor of Frick in the amount of $11,677.66. The trial court further dismissed all of the Hoenings' claims due to a "failure of proof."

{¶ 18} From the judgment against them, the Hoenings appealed. Mr. Hoening has died since the filing of the notice of appeal. Mrs. Hoening, by motion filed herein November 28, 2011, has asked this court to consider "new vital evidence." Specifically, she has

submitted a picture of the residence, which she claims refutes the testimony of Frick's expert. On appeal, we are limited to the record made up in the trial court. Accordingly, the motion asking us to consider new evidence is denied.

II

{¶ 19} Hoening's' First Assignment of Error states as follows:

{¶ 20} "THE TRIAL COURT ERRED IN RELYING ON ANY PROVISION OF A NON-ENFORCEABLE CONTRACT, CONTRACT NOT HAVING BEEN PERFORMED IN A TIMELY MANNER. COURT RELIED PREJUDICIALLY IN MANY AREAS, GIVING UNDUE CREDIBILITY TO MR. DANIEL FRICK WHILE DISPARAGING MRS. HOENING'S TESTIMONY. FOR INSTANCE: THE INTERPRETATION OF THE BREACHED CONTRACT WITH ONLY THE TESTIMONY OF MR. FRICK AND MRS. HOENING AS TO ORAL AGREEMENT TO EXTEND TIME TO MR. FRICK TO ARRANGE THE CLOSING OF R.E. CONTRACT."

{¶ 21} From our review of the brief and the record, it appears that Hoening complains in this assignment of error that the trial court erred in finding that Frick was entitled to possession of the property as of August 1, 2008. She contends that the date for possession was set as two months after closing, which was August 12.

{¶ 22} The validity of the original contract was not disputed in the trial court; the dispute was whether the date for possession changed when the closing date was changed by written agreement. According to Hoening's testimony, the closing date was understood by both her and Frick as being set to occur two months following closing. According to Frick, the closing date was not changed.

{¶ 23} The trial court found that the original contract expressly stated that possession was to be given to Frick on July 15, "[h]owever, by Mr. Frick's agreement after the closing, possession was delayed until August 1, 2008, and such date is binding on both parties."

{¶ 24} We agree that based upon the testimony and the letter from Hoening to Frick, the possession date was, at the latest, set for August 1, 2008.[1] As of that date, Frick was free to enter the property and dispose of any "leftover refuse" as provided for in the original contract. While Hoening contends that many items left on the property were valuable personal items, there was contradictory testimony by the Health Department inspector and Frick, upon which the trial court could validly rely, which indicated that the items on the property were junk to be disposed of after the date for possession.

{¶ 25} We conclude that the trial court's judgment concerning the date for Frick to take possession of the property is supported by competent, credible evidence. Thus, we will not disturb that judgement as being against the weight of the evidence. See *C.E. Morris Co. v.. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, syllabus.

{¶ 26} The First Assignment of Error is overruled.

III

{¶ 27} Hoening asserts the following for her Second Assignment of Error:

{¶ 28} "THE COURT ABUSED IT'S [SIC] DISCRETION WHEN ON JULY 19, 2010 IT REFUSED TO HEAR THE CASE BEFORE IT. A CASE WHICH HAD BEEN REMANDED FOR RETRIAL. THIS WAS CASE #Q8-CV-64840 COUNTER-CLAIM OF

---

[1] It appears to us, however, that the date for possession was set forth in the original contract and that the date was not amended by subsequent writing. Further, it does not appear to us that Frick agreed to extend the date for possession; it appears that he was simply prevented from gaining entrance due to the actions of the Hoenings. Thus, we would have concluded that Frick was entitled to possession on July 15, 2008.

MR. FRICK APPELLATE CASE 2009-CA-08.   THE TRIAL COURT'S CANCELLING OF THE HEARING WHEN ALL PERTINENT PARTIES WERE PRESENT AND WAITING WAS A GROSS MISCARRIAGE OF JUSTICE."

{¶ 29}  In this argument, it appears that Hoening takes issue with the fact that the trial court failed to hold a trial on July 19, 2010.   She argues that she was present for trial on that date and   had witnesses "waiting in the hallway."

{¶ 30}  There is nothing in the record to establish that any party was present on July 19 or that witnesses were waiting for trial.   The parties had, on July 16, been in court and agreed to continue the trial date.

{¶ 31}  Further, Mrs. Hoening, acting pro se, had filed a motion seeking a continuance of the July 19 trial date.   Although her request was denied, her counsel filed a second motion seeking a continuance a few days later.   Thus, Hoening had a motion for a continuance pending at the time the trial court granted the continuance.   This was not a case, as Hoening contends, of the trial court sua sponte continuing the trial date.

{¶ 32}  "The doctrine of invited error estops an appellant, in either a civil or criminal case, from attacking a judgment for errors the appellant induced the court to commit. Under that principle, a party cannot complain of any action taken or ruling made by the court in accordance with the party's own suggestion or request."  *Royse v. Dayton,* Montgomery App. No. 24172, 2011–Ohio–3509, ¶ 11, citing *State v. Woodruff* (1983), 10 Ohio App.3d 326. Thus, we decline to find error when the action of the trial court was requested by the Hoenings.

{¶ 33}  Additionally, if Mrs. Hoening later changed her mind about seeking a

continuance, she failed to communicate her change of mind to the trial court or to counsel.   A review of the transcript of the pretrial hearing demonstrates that both Mrs. Hoening and her counsel were permitted to comment during the hearing, and neither objected to the continuance.   Indeed, when asked whether she had any questions regarding the decision to continue the trial date, Mrs. Hoening replied, "I heard you, and I'm willing to go along with whatever my attorney would like to do, sir.   I thank you, and I apologize for the delays and happenings.   I was just trying to protect myself."

{¶ 34} Finally, we cannot find any prejudice from the trial court's granting of the motion.   Mrs. Hoening had just retained counsel, who needed time to prepare the case for trial.   There is no indication in this record that, as claimed in the appellate brief, the Hoenings had witnesses present either on the July 16, 2010 pretrial hearing date or on July 19, 2010. And other than her conclusory  claim that the decision resulted in prejudice, Mrs. Hoening fails to demonstrate any prejudice stemming from the continuance.

{¶ 35} We conclude that the trial court did not abuse its discretion, or commit error, in continuing the trial date.   We further conclude that even if the decision to continue was error, no prejudice resulted.   Accordingly, the Second Assignment of Error is overruled.

IV

{¶ 36} Hoening's Third and Fourth Assignments of Error state:

{¶ 37} "MOST IMPORTANT AND DAMAGING ERROR OF ALL REGARDING THIS APPEAL.   THE JUDGE IGNORED OR BYPASSED THE CASE OF HOENING VS. FRICK, THE ORIGINAL CASE, CASE #08-64840 WHICH WAS NOT AMENDED; IT WAS REFILLED [SIC] WITH NEW NUMBER 10-CV-00437 WITH THE ONLY CHANGE

BEING THE ADDITION OF MR. HOENING'S NAME, A HALF-OWNER OF ALL MATTERS CONCERNED. THE COURT HAD INSISTED ON COMBINING THE CASES, HOENING VS. FRICK AND FRICK VS. HOENING, A COUNTERCLAIM WHICH WAS REMANDED. THE DIRECTION AND ABRUPT FINALIZATION OF THESE MATTERS BY THE COURT APPEAR TO BE VERY PREJUDICIAL TO THE HOENING CASE. THE JUDGMENT IN THIS MATTER IS ERRONEOUS, COSTLY AND A TRAVESTY OF JUSTICE, CAUSING UNDENIABLE HARM TO MRS. HOENING, PHYSICALLY, EMOTIONALLY AND FINANCIALLY.

**{¶ 38}** "THE JUDGE RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE HERETOFORE PRESENTED. ALTHOUGH THE COURT WAS STEERED TO BYPASS MRS. HOENING'S WITNESSES, THE JUDGE HAD HEARD IT ALL IN THE PRIOR SESSIONS. HE JUST CHOSE TO RULE AGAINST IT. I SEE ALL THIS NOT ONLY AS A TRAVESTY ON JUSTICE, BUT INDEED AN OBSTRUCTION ON JUSTICE."

**{¶ 39}** These assignments of error appear to be directed to the claim that the trial court made numerous errors and that the judgment is against the manifest weight of the evidence.

**{¶ 40}** First, Hoening complains that the trial court "bypassed" her evidence and witnesses when it "craftily" suggested during trial that they "use the transcript of the remanded case as testimony today." She further contends that her counsel "set her up" to fail by agreeing thereto.

**{¶ 41}** A review of the record reveals that when Frick began to present his evidence, the trial court and counsel agreed to use Frick's testimony from the prior trial for his case in

chief. Both parties had the transcript of the prior trial, and counsel agreed that using that testimony was acceptable. No other portion of the transcript was used. As will be discussed below, Hoening's witnesses and evidence were not "bypassed" by reason of this action. Hoening's counsel was permitted full cross-examination of Frick. And counsel, in fact, engaged in a complete and effective cross-examination.

{¶ 42} We find no nefarious purpose behind the decision to use Frick's prior testimony for his case in chief. It was simply a method of making efficient use of time. We see no way that Hoening was prejudiced by this procedure.

{¶ 43} Next, Hoening claims that the trial court "shut out" her witnesses. First, she contends that her husband was limited to one question despite the fact that he would have corroborated her testimony. We find no support in the record for this assertion. The transcript demonstrates that counsel for the Hoenings stated, when he called Mr. Hoening to the witness stand, that he had "really one question" to ask of him. However, counsel then proceeded to ask six questions, all of which were directed at eliciting testimony that did in fact corroborate Mrs. Hoening's testimony. There is no indication in the record that the trial court limited the testimony of Mr. Hoening.

{¶ 44} Hoening next complains that, by continuing the trial date, the trial court interfered with testimony that a neighbor would have provided. Hoening contends that the neighbor had "worked in the disputed property with Mrs. Hoening before and after the sale on July 19, 2008." She claims that the neighbor was unavailable to testify because she was residing in Florida for the winter. Again, we note that the continuance was granted at Hoening's request. Thus, this argument is without merit.

**{¶ 45}** Hoening also complains that her daughters and Mr. Hoening's brother were prevented from testifying. She contends that one daughter would have testified that she "considered" purchasing the property. The other daughter would have testified that the daughter's husband observed Frick at the property prior to the date set for possession. Mr. Hoening's brother would have testified that "he accompanied Mrs. Hoening to Martino's Auction House where, together, they purchased a lot of small items belong [sic] to [Mr. Hoening] brought in by Daniel Frick, for $300.00 (=/-) a little. Collectibles and personal memorabilia."

**{¶ 46}** There is nothing in the record to support Hoening's claim that these witnesses were prevented from testifying. Furthermore, we fail to see how the fact that a daughter considered purchasing the property, but ultimately declined to do so, is relevant to the issues herein. It appears that the testimony of the other daughter, concerning her husband's observations, would have constituted impermissible hearsay, and thus, would not have been allowed at trial had it been presented. The testimony of Mr. Hoening's brother also appears to be based upon hearsay; there is no indication that he actually had first-hand knowledge as to whether Frick sold the auction house the "collectibles and personal memorabilia."

**{¶ 47}** Hoening next contends that the trial court erred by failing to permit closing arguments following trial. However, we note that both parties were permitted to file post-trial briefs setting forth their closing arguments. We have reviewed the brief filed by Hoening's counsel and conclude that it made a clear and concise argument. Therefore, we find no error and no prejudice.

**{¶ 48}** In support of her claim that the judgment is against the manifest weight of the

evidence, Hoening claims that "a lot of Frick's testimony was lies," and that his expert carpenter and house inspector also lied.

**{¶ 49}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of facts to determine." *In re Guardianship of Smith,* Clark App. No. 09 CA 69, 2010–Ohio–4528, ¶ 19, citing *State v. DeHass* (1967), 10 Ohio St.2d 230. The court of appeals "has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, ¶ 24. "This presumption arises because the trial judge [or finder-of-fact] had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " Id. A trial court's judgment will be reversed only if its factual findings are against the manifest weight of the evidence. *KeyBank Natl. Assn. v. Mazer Corp.,* Montgomery App. No. 23483, 2010–Ohio–1508, ¶ 36. In the civil context, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence if there is "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v.. Foley Constr. Co.*, 54 Ohio St.2d 279 at syllabus; *State v. Wilson,* at ¶ 24.

**{¶ 50}** While Hoening claims that Frick lied to the trial court, we note that she fails to make anything other than a general assertion in this regard. We have reviewed the entire record. We cannot say that the trial court erred in giving credence to Frick's testimony over that of Hoening, especially given that Hoening's testimony, at times, contradicted other portions of her testimony. We further conclude that there was competent, credible evidence that Frick did not dispose of any of Hoening's personal property until after he took his rightful

possession of the real estate. We conclude that the contract for sale was valid and binding and that it expressly provided that Frick should, and could, dispose of any items left on the property after he took possession. Furthermore, there is credible evidence that Hoening placed a dumpster on the property, that Frick placed all of her personal items into the dumpster and that Hoening then took possession of the dumpster and its contents.

{¶ 51} We conclude that the trial court's judgment is supported by competent, credible evidence. Accordingly, the Third and Fourth Assignments of Error are overruled.

V

{¶ 52} All of Hoening's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mary Lou Hoening
Paul H. Shaneyfelt
Hon. Jonathan P. Hein